J-S42008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHERROD RICE, | |
| Appellant | No. 1746 EDA 2014 |

Appeal from the PCRA Order June 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0400722-2003

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 14, 2016**

Appellant, Sherrod Rice, appeals from the Order entered on June 12, 2014, that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The relevant facts of this case were set forth by a prior panel of this Court in addressing Appellant's direct appeal in 2009.  This Court, quoting the trial court, stated as follows:

> The trial court summarized the procedural and factual history of this case as follows:
>
>> [Appellant], Sherrod Rice, went to trial for the above-captioned case before this court, and he elected to be tried by a jury. This was a retrial of a capital case, as the first trial ended on April 4, 2005 as a hung jury. [Appellant] was re-tried with his two co-defendants, Dyrome Fuller and Robert

---

[*] Former Justice specially assigned to the Superior Court.

Richardson. The instant trial commenced on January 19, 2006, with the jury being sworn in and [Appellant] being formally arraigned on the charges of murder, firearms not to be carried without a license, carrying firearms on public streets or public property, possessing instruments of crime, criminal conspiracy, aggravated assault, and recklessly endangering another person. At the time of his arraignment before the sworn jury, he pleaded not guilty to all of the charges against him.

The Commonwealth rested its case against [Appellant] on January 31, 2006, after presenting witness testimony and forensic evidence. [Appellant] offered no testimonial or physical evidence on his own behalf, and rested his case after agreeing to a final set of evidentiary stipulations.

The jury rendered its verdict on February 2, 2006. They found [Appellant] guilty of all charges. They returned a verdict of first-degree murder as to the general charge of murder for that bill of information, and found him guilty of all of the other offenses as charged. The trial court had previously entered a judgment of acquittal for the charge of firearms not to be carried without a license. The penalty phase of the trial was continued to February 6, 2006. On that date, the trial court granted [Appellant's] challenge to the proposed "death qualifying aggravating factors".

The formal sentencing hearing for [Appellant] was deferred, and a pre-sentence investigation report and mental health evaluation were ordered. After a review of the facts of this case, [Appellant's] prior record score, and his offense gravity score, [Appellant] was sentenced on March 22, 2006. At that time, [Appellant] was sentenced to the mandatory sentence of life imprisonment for the first-degree murder conviction. He received sentences of imprisonment of two and one half years to five years for the possessing instruments of crime conviction, two and one half to five years' imprisonment for firearms not to be carried on public

street or public property, ten to twenty years for criminal conspiracy, ten to twenty years for aggravated assault, and one to two years for reckless endangering another person. All of these sentences were to run consecutive to the sentence of life imprisonment and consecutive to each other.

A direct appeal to the Superior Court of Pennsylvania followed, and was timely filed. However, that appeal was dismissed for previous appellate counsel's failure to file a 1925(b) statement. The appeal was reinstated by the Superior Court pursuant to a motion by present appellate counsel who cited the trial court reporter's failure to provide transcripts as the reason for the inability to file a 1925(b) statement. This opinion by the trial court is in response to the Pa.R.A.P. 1925(b) statement that was ultimately filed by [Appellant] on July 11, 2008.

## **FACTS:**

On the afternoon of June 29, 2002, three of the Commonwealth witnesses in this case, Ronald James, Gregory Allen, and Hakim Lane, were involved in a confrontation on a residential street in Southwest Philadelphia that allegedly centered on drug trafficking. There were gunshots fired at that time, but no one was hit or injured. After this incident, Hakim Lane summoned some of his friends from North Philadelphia to retaliate against Ronald James.

These "Friends" were [Appellant] and his two codefendants, and they arrived on the block shortly after the first altercation had ended. [Appellant] and one of his codefendants were armed with automatic handguns, and the second co-defendant came to the scene with an assault rifle. The prosecution witnesses linked [Appellant] with a nine millimeter weapon that he was found with at the time of his arrest some months later.

As they entered the block after turning the corner, all three of them began firing in an apparent attempt to shoot Ronald James. When the shooting commenced, there were a number of adults and children who were sitting, walking, or playing on the block. The Commonwealth offered testimony that there were close to forty shots fired that afternoon from the three weapons that [Appellant] and co-defendants possessed. Car windows were shattered, porches were struck, and two people were wounded. The decedent, Omain Gullette, was fatally wounded as he attempted to run away from the gunfire. Another one of the unfortunate bystanders that afternoon, Akeem Johnson, was severely injured when he suffered gunshot wounds to one of his legs as he stepped off his porch to go to the grocery store.

Eyewitnesses were called by the Commonwealth, and they testified that they saw [Appellant] and co-defendants shooting up and down the street on the afternoon in question. In addition, there was testimonial evidence that detailed the defendants' relationship to each other, the reason they were on the block that afternoon, and the earlier conflicts that prompted them to arrive there with the intent to kill or seriously injure Mr. James. None of the three defendants offered any substantive evidence to rebut the account of the incident that was presented to the jury by the Commonwealth witnesses, though they did challenge the credibility of the eyewitnesses to this tragic event.

Trial Court Opinion (T.C.O.), 8/12/08, at 1-5.

**Commonwealth v. Rice**, 1490 EDA 2006, 981 A.2d 320 (Pa. Super. filed June 17, 2009) (unpublished memorandum at 1-4).

The prior panel of this Court affirmed Appellant's judgment of sentence in the memorandum cited above on June 17, 2009. On December 18, 2009, Appellant filed a timely PCRA petition. Barbara McDermott, Esquire, filed a

- 4 -

counseled and amended PCRA petition on August 31, 2011. Subsequently, the PCRA court appointed Emily Cherniack, Esquire to represent Appellant, and Attorney Cherniack filed a supplemental PCRA petition on July 20, 2012, and a second supplemental PCRA petition on July 11, 2013. On June 12, 2014, the PCRA court denied Appellant's PCRA petition.

Appellant, through Attorney Cherniack, filed a timely appeal from the PCRA court's denial of his PCRA petition. While the appeal was pending, Appellant filed a *pro se* letter with this Court challenging Attorney Cherniack's effectiveness as counsel. This Court forwarded Appellant's *pro se* letter to Attorney Cherniack pursuant to **Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011). On June 3, 2015, Attorney Cherniack filed a document with this Court in which she sought to either withdraw as counsel or have the case remanded for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).[1] On July 23, 2015, this Court filed an order denying in part and granting in part Attorney Cherniack's motion to withdraw. In the July 23, 2015 order, we stated as follows:

> Appellant, Sherrod Rice, is currently appealing an order dismissing a first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. During the pendency of the instant appeal, Appellant filed *pro se* documents assailing, *inter alia*, the effectiveness of Attorney Emily Cherniack, his appellate counsel. These documents were forwarded to Attorney Cherniack pursuant to Pa.R.A.P. 3304 and **Commonwealth v.**

---

[1] In **Grazier**, our Supreme Court held that where a defendant seeks to waive his right to counsel, an on-the-record determination should be made concerning whether that waiver is knowing, intelligent, and voluntary. **Id**. at 12-13.

- 5 -

*Jette*, 23 A.3d 1032, 1044 (Pa. 2011). On June 3, 2015, in response to Appellant's *pro se* pleadings, Attorney Cherniack filed the aforementioned Petition to Withdraw as Counsel or in the Alternative, Remand for a **Grazier** Hearing.

In **Commonwealth v. Karanicolas**, 836 A.2d 940 (Pa. Super. 2003), this Court explained that "[b]efore an attorney can be permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law requires counsel to file and obtain approval of a 'no-merit' letter pursuant to the mandates of **Turner/Finley**."[2] *Id*. at 947 (citation omitted). In addition, in **Grazier**, our Supreme Court set forth the requirement that an on-the-record inquiry must be conducted to determine whether an appellant's waiver of counsel is knowing, intelligent, and voluntary.

Here, Attorney Cherniack's petition does not satisfy the standards for withdrawal under **Turner/Finley**. Accordingly, we **DENY**, without prejudice to raise the issue on remand, counsel's petition to withdraw. Moreover, while Appellant has expressed his displeasure with present counsel and purported to raise issues he desires to have decided by this Court, he has not specifically requested to proceed *pro se*. Nevertheless, given the *pro se* documents already filed by Appellant and Attorney Cherniack's petition, we find it prudent to remand this matter to the PCRA Court for further proceedings. Therefore, we **GRANT** counsel's petition to remand for a hearing.

At this hearing, the PCRA court shall make the following determinations: 1) if Appellant desires to represent himself, the PCRA court shall conduct an on-the-record colloquy pursuant to **Grazier** as to whether Appellant may proceed *pro se;* 2) if Appellant does not wish to proceed *pro se*, the PCRA court shall determine whether Attorney Cherniack may be permitted to withdraw as counsel; and 3) if the PCRA court permits Attorney Cherniack to withdraw, it shall determine if Appellant is entitled to the appointment of new counsel. **This hearing shall be held within thirty days from the filing of this order, and**

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) are the seminal Pennsylvania cases discussing the requirements counsel must satisfy in order to withdraw from representing a defendant on collateral review.

> **the PCRA court shall promptly notify this Court of its determination.** Upon notification of the PCRA court's determination, the Superior Court Prothonotary shall establish a new briefing schedule.

Order, 7/23/15 (emphasis in original).

The PCRA court promptly complied with this Court's directive and held a *Grazier* hearing on August 18, 2015. Following the hearing, the PCRA court permitted Attorney Cherniack to withdraw, determined that Appellant did not desire to represent himself, and appointed current counsel, Barnaby C. Wittels, Esquire. Thereafter, Attorney Wittels filed a brief on Appellant's behalf on January 19, 2016, and the Commonwealth filed its brief in response on June 15, 2016.[3] This matter is now ripe for disposition.

On appeal, Appellant raises the following issues for this Court's consideration:

A. Did the PCRA court err in denying PCRA relief where trial counsel was ineffective for failing to object to an improper and constitutionally incorrect jury instruction on specific intent to kill in this first degree murder case?

B. Did the PCRA Court err in not granting an evidentiary hearing so that Appellant could present testimony relative to trial counsel's failure to properly investigate the case?

C. Did the PCRA Court err in not granting an evidentiary hearing so that Appellant could testify that trial counsel did not consult with him prior to trial counsel admitting in his opening statement to the jury that Appellant was guilty of some of the crimes charged?

---

[3] Appellant and the Commonwealth each petitioned for and were granted three continuances in this protracted appeal. These six continuances are the reason for the delay in our disposition of this matter.

D. Did the PCRA Court err in not finding trial counsel ineffective for failing to object to non-relevant and highly prejudicial testimony at trial about drug dealing and Appellant's role therein?

Appellant's Brief at 8.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011) (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*. (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

Appellant's issues on appeal allege ineffective assistance of counsel. When considering an allegation of ineffective assistance of counsel, we note that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) appellant was prejudiced by counsel's action or omission. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of

ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). "The burden of proving ineffectiveness rests with Appellant." ***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007). Additionally, the right to an evidentiary hearing on a PCRA petition is not absolute, and the PCRA court may decline to hold a hearing if the petitioner's claims are patently frivolous with no support in either the record or other evidence. ***Commonwealth v. Walls***, 993 A.2d 289 (Pa. Super. 2010); Pa.R.Crim.P. 907.

Appellant first argues that trial counsel was ineffective for failing to object to an improper and incorrect jury instruction regarding the specific intent to kill. On review, we are constrained to conclude that this issue was not properly preserved.

It is well settled that in order to preserve an issue for appellate review, an appellant must timely file a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and any issues not raised will be deemed waived. ***Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005) (re-affirming the bright-line rule first set forth in ***Commonwealth v. Lord***, 719 A.2d 306 (Pa. 1998)). Here, the Pa.R.A.P. 1925(b) statement that was filed by prior counsel broadly alleges that "the trial court gave the incorrect jury instruction on criminal conspiracy, accomplice liability, and first degree murder." Appellant's Pa.R.A.P. 1925(b), 7/18/14, at ¶5. This issue, as

presented to the PCRA court, fails to provide the basis for the challenge, *e.g.*, ineffective assistance of counsel, and fails to provide a concise error. If Appellant was purporting to challenge that trial counsel was ineffective for failing to object to a jury instruction, he provided a vague and imprecise issue. In other words, all that can be gleaned from the issue as presented in the Pa.R.A.P. 1925(b) statement is that the trial court allegedly erred in providing its instruction to the jury on conspiracy, accomplice liability, and first degree murder. We conclude that this overly broad claim of error fails to preserve the issue for review. *See Commonwealth v. Lemon*, 804 A.2d 34, 38 (Pa. Super. 2002) (stating that when an appellant's Pa.R.A.P.1925(b) statement is too vague to identify his specific issue, the issue is waived). Present counsel narrowed Appellant's issue to an allegation that trial counsel failed to object to the instruction as to "the specific intent to kill" element necessary to prove first-degree murder. Appellant's Brief at 23. However, as stated above, this finite error was not presented to the PCRA court, and therefore, we conclude that Appellant's issue is waived on appeal.

In the second issue, Appellant avers that the PCRA Court erred in not holding an evidentiary hearing to allow Appellant to present testimony regarding trial counsel's alleged failure to investigate this case. Specifically, Appellant argues that trial counsel failed to investigate the backgrounds of Commonwealth witnesses Channa Wright, Tricia Goldberg, Ronald James,

and Darnell Peace because "much of their testimony was contradictory." Appellant's Brief at 25.

On review, we point out that this is simply a bald accusation, and it is not supported by any argument, citation to the record, or citation to relevant authority. Accordingly, we conclude that this issue is waived. ***Commonwealth v. Irvin***, 134 A.3d 67, 73-74 (Pa. Super. 2016).[4]

In his third issue on appeal, Appellant avers that the PCRA court erred in not holding a hearing "so Appellant could testify that trial counsel did not consult with him prior to trial counsel admitting in his opening statement to the jury that Appellant was guilty of some of the crimes charged." Appellant's Brief at 26. We cannot agree.

At the outset, we note that Appellant had no right to an evidentiary hearing.

> A PCRA court is only required to hold a hearing where the petition, or the Commonwealth's answer, raises an issue of material fact. Pa.R.Crim.P. 909(B)(1)-(2). When there are no disputed factual issues, an evidentiary hearing is not required. ***Id.***; ***Commonwealth v. Morris***, 546 Pa. 296, 684 A.2d 1037, 1042 (1996) (citation omitted). If a PCRA petitioner's offer of proof is insufficient to establish a prima facie case, or his allegations are refuted by the existing record, an evidentiary hearing is unwarranted. ***See Commonwealth v. Hutchinson***, 611 Pa. 280, 25 A.3d 277, 320 (2011) (citation omitted); ***Commonwealth v. Walker***, 613 Pa. 601, 36 A.3d 1, 17 (2011).

***Commonwealth v. Eichinger***, 108 A.3d 821, 849 (Pa. 2014).

---

[4] Additionally, we point out that there is no assertion or indication in the brief that the result of the proceedings would have been any different had counsel investigated these witnesses. Thus, this issue would fail on that basis as well. ***Reed***, 42 A.3d at 319.

The PCRA court comprehensively addressed Appellant's issue as follows:

> During his opening statement, defense counsel conceded to [Appellant's] guilt as to "some of the crimes" with which he was charged, and asked the jury to "only hold him accountable for that which he committed." (N.T. 1/19/06, pgs. 100-104). Defense counsel asserted five times throughout his opening that the evidence would show that [Appellant] "never shot" the victim, and that he "was not guilty of first-degree murder." *Id.* Counsel *did* argue that [Appellant] was present at the scene of the crime and brandished a firearm only with the intent to confront a drug rival. It was asserted that [Appellant] neither knew the decedent, nor had any motive to kill him.[5]
>
> > [5] Counsel's strategy was to show that just because [Appellant] was present at the crime scene, that fact alone did not automatically conclude that he was guilty of first-degree murder. [Appellant] was tried with two co-defendants all charged with related crimes. In addition, a ballistics expert testified at trial that projectiles removed from the victim's body indicated that the gunshot wounds were inflicted from multiple firearms, none of which matched the caliber firearm possessed by [Appellant]. (N.T. 1/26/06, pgs. 201-208).
>
> [Appellant] argues that defense counsel had no legal authority to employ such a strategy. Specifically, [Appellant] argues that, first, that [sic] the right to effective assistance of counsel attaches during opening statements as a matter of constitutional law under the Sixth Amendment, and second, that by [sic] utilizing this concession of guilt tactic without [Appellant's] consent, amounts to *per se* ineffectiveness of counsel. It is asserted that because of counsel's strategy, [Appellant] "suffered prejudice as a result of trial counsel's unilateral concession of guilt." ([Appellant's] Supplemental Amended Petition, 6/20/12).
>
> It is well settled that the law presumes that counsel was effective at trial and the defendant carries the burden of proving ineffectiveness. *Commonwealth v. Baker*, 614 A.2d 663 (Pa. 1992). It is the petitioner who bears the burden of proving that

(1) the underlying claim has arguable merit, (2) counsel's actions or inaction had no reasonable basis, and, most importantly, (3) the petitioner was prejudiced by the act or omission to such a degree that but for counsel's conduct, the outcome of the proceedings would have been different. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987); *Strickland v. Washington*, 466 U.S. 668 (1984). If any of these elements are not satisfied, the claim fails. *Commonwealth v. Fulton*, 830 A.2d 567 (Pa. 2003). A claim of ineffectiveness of counsel will only be granted when the petitioner establishes the counsel's conduct so undermined the truth determining process that no reliable verdict could have been rendered. *See*, 42 Pa.C.S.A. §9543.

In analyzing ineffectiveness claims, the courts today are guided by *Strickland*, as well as its companion case, *United States v. Cronic*, 466 U.S. 648 (1984) — two United States Supreme Court (USSC) decisions that require different methods of analyzing attorney ineffectiveness. In analyzing a claim under *Strickland*, the [Appellant] must satisfy each prong of the test, including the showing of actual prejudice. Conversely, when analyzing counsel's alleged ineffectiveness under *Cronic*, an analysis is not required, as the prejudice element is already presumed.[6]

> [6] The court in *Cronic* outlined three specific circumstances in which prejudice can be assumed: First, a presumption of prejudice is warranted where there is a complete denial of counsel during a critical stage of trial. Second, prejudice is also presumed where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." Third, in any case where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without any inquiry." Under these circumstances, prejudice need not be proven, as it can be clearly assumed.

In this case, [Appellant] argues that "*Cronic's per se* prejudice standard applies," as he asserts that defense counsel's actions were blatantly prejudicial under the law.

In the case of *Commonwealth v. Cousin*, 888 A.2d 710 (Pa. 2005), the Pennsylvania Supreme Court held that the attorney's actions of conceding guilt during closing arguments, after realizing acquittal of a homicide charge was unrealistic, did not amount to inefficiency. The court, using the *Strickland/Pierce* test, found counsel not ineffective and determined that the attorneys' actions did not fall under the *Cronic* analysis. The court's rationale — the *Cronic* case "is limited to cases []where the magnitude of counsel's error is such that the verdict is almost certain to be unreliable," and that "attorney's strategic decision to concede guilt during his closing argument was qualitatively different from a complete failure to subject the state's case to adversarial testing as contemplated by *Cronic*." *Id.*

Further, in the USSC opinion of *Florida v. Nixon*, 543 U.S. 175 (2004), after the trial attorney deposed all the state's witnesses and evaluated the evidence in the case, he determined that the defendant's guilt was not subject to dispute. Faced with the inevitability of going to trial, even though his client pled not guilty, counsel conceded to the defendant's guilt during his opening statement. In a unanimous opinion, the Court held that counsel was not deemed ineffective following a *Strickland/Pierce* analysis, as it determined that counsel's strategy did not automatically render his performance deficient to trigger a review under *Cronic*.[7]

[7] The court determined that "if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain." *Nixon* at 177.

In the present case, trial counsel, after fully reviewing the case, determined that knowing the evidence against his client, there was no possibility of acquittal. Therefore, counsel's best strategic defense was to seek a conviction for a lesser offense than first-degree murder. According to the rationale of the above-mentioned case law, counsel in the present case cannot be found *per se* ineffective under *Cronic*.

Therefore, counsel's actions in this case must be analyzed under the *Strickland/Pierce* standard; however, [Appellant] cannot sustain any of these elements. Counsel did have a

- 14 -

reasonable basis for his strategic decision to concede [Appellant's] guilt — the evidence against [Appellant] was overwhelming: multiple eyewitnesses (one of whom regularly purchased drugs from [Appellant]) and ballistics evidence placed [Appellant] at the scene of the crime as the victim was shot multiple times. As this court noted in its opinion, trial counsel "made a strategic choice not to attempt to make an absurd argument that [Appellant] was not present at the crime scene or that he did not fire a gun that afternoon, given the overwhelming evidence to the contrary." (Trial Court Opinion, pg. 12). Counsel's strategy was to argue to the jury that [Appellant] was at the crime scene firing a weapon, but was *not* firing at the decedent, and most importantly, according to ballistics, he did not shoot the deceased. Trial counsel made the only sensible and reasonable argument according to the facts of this case. [Appellant] was neither prejudiced nor was he deprived a fair trial. Additionally, because [Appellant] must demonstrate actual prejudice, he failed to prove that but for counsel's conduct, the outcome of the proceedings would have been different, as the evidence against [Appellant] was overwhelming — he was present at the scene of the crime engaged in criminal activity.[]

[Appellant] also argues that trial counsel made the strategic decision to concede guilt without his consent. [Appellant] may not have known exactly how counsel was going to execute that strategy, but a mutual understanding must be assumed in that the decision was the best opportunity to obtain a favorable verdict. Further, if [Appellant] disagreed, objected, or did not approve of counsel's strategy, he never voiced any concern or objection to the court at any time following opening statements. (N.T. 1/19/06, pg. 105).[9] Additionally, the *Nixon* court also addressed this issue when it stated that defense counsel, as a general matter, "has a duty to discuss potential strategies with the defendant..., but when a defendant, informed by counsel, neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course." *Nixon* at 178. However, the court in *Cousin* addressed that point and held that the rationale in *Nixon* cannot be read so narrowly as to only be applicable to capital cases. The court in *Cousin* reasoned that the emphasis of *Nixon* was upon the difference between a guilty plea and a reasoned strategy of conceding guilt while still preserving all of the defendant's other

rights, rather than on the fact of counsel's unsuccessful attempts to elicit a response from his client after formulating his defense strategy. The court went on to explain that *Nixon* recognized that even if counsel concedes guilt during an opening statement, the prosecution still must present sufficient evidence to support a verdict of guilt beyond a reasonable doubt in spite of counsel's strategy.

> [9] *See, Cousin* (defense counsel stated that he never specifically discussed conceding guilt with the defendant, although he maintained that he and his client understood that there was no possibility of an acquittal. The court, in its rationale stated, "...whereas here the attorney apparently conceded guilt only upon the tacit understanding that both he and his client understood form the state of affairs at trial and this comprised the best opportunity to attain a favorable verdict.") at 722.

In the present case, concerning counsel's concession of guilt during opening statements, the actions were sensible and reasonable under the circumstances and that the decision was the best opportunity to obtain a favorable verdict in an attempt to avoid a first-degree murder conviction. *See, Commonwealth v. Colavita*, 993 A.2d 874 (Pa. 2010) (it is well established that "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests"). Counsel's actions cannot be deemed *per se* prejudicial, and therefore cannot be governed by *Cronic*. Therefore, counsel's strategy, under a *Strickland* analysis, cannot support a claim of ineffectiveness, as the strategy was reasonable and [Appellant] has failed to show exactly how he was prejudiced in that but for counsel's actions, the outcome of the trial would have been different. Rather, [Appellant] has concentrated on various constitutional concerns, rather than attempting to fulfill each of the prongs of Strickland. In addition, it is assumed [Appellant] was aware that an acquittal was unlikely, and if he objected or disagreed with his attorney's strategy, he never voiced any objection to this court. [Appellant] cannot satisfy any claim of attorney error concerning this issue. For the reasons stated herein, [Appellant's] claim should be dismissed.

PCRA Opinion, 9/18/14, at 3-9 (footnotes and emphases in original) (footnote 8 omitted). We agree with this analysis. Counsel's strategy was wholly reasonable under the circumstances presented here, and Appellant has failed to prove any of the prongs necessary to establish a claim of ineffective assistance of counsel.

In his final claim of error, Appellant argues that the PCRA Court erred in not finding trial counsel ineffective for failing to object to the Commonwealth's references to Appellant's role in selling drugs. We conclude that no relief is due.

Pursuant to *stare decisis* and our rules of evidence:

> While evidence of prior bad acts is inadmissible to prove the character of a person in order to show conduct in conformity therewith, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. **Commonwealth v. Sherwood**, 603 Pa. 92, 982 A.2d 483, 497 (2009); Pa.R.E. 404(b)(2) (providing that "[e]vidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident").

**Commonwealth v. Busanet**, 54 A.3d 35, 60 (Pa. 2012). Moroever, we note that counsel cannot be deemed ineffective for failing to present a meritless claim. **Commonwealth v. Jones**, 912 A.2d 268, 278 (Pa. 2006).

Here the PCRA court addressed Appellant's argument as follows:

> For the reasons mentioned herein, no claim of ineffectiveness can be sustained, as it would have proven meritless for defense counsel to object to evidence that was properly admitted into the record.

The evidence concerning [Appellant's] prior drug dealing activity and his relationships with his co-defendants was highly relevant in establishing [Appellant's] motive, intent, and identity of why he was present at the crime scene firing a weapon.

It has been well established that where such evidence of prior bad acts or crimes offered for some relevant purpose other than to show criminal propensity or bas character, such evidence is admissible. *Commonwealth v. Spotz*, 756 A.2d 1139 (Pa. 2000). Such evidence can be admitted to show, among other things, motive, intent, plan, or identity. First, the evidence was admitted to prove [Appellant's] identity, as multiple witnesses testified that they purchased drugs from [Appellant] on multiple occasions. (N.T. 1/24/06, 139-143; 1/25/06, 86-88). Those same witnesses identified [Appellant] as a shooter at the scene of the crime. Second, the evidence was also admitted to demonstrate [Appellant's] motive, as [Appellant] was in dispute with rival drug dealers who were present at the scene of the crime. It was necessary for the jury to know this background information, as it was the basis and backdrop for the events that transpired at the scene of the crime.

Therefore, no claim of ineffectiveness can be sustained — if counsel had objected to the admission of this relevant and properly admitted evidence, the objection would have been overruled. As the evidence was properly introduced at trial, it was therefore proper for the Commonwealth to utilize that evidence during opening statements. In analyzing this claim under *Pierce /Strickland*, counsel cannot be deemed ineffective as his failure to object was reasonable under the circumstances, and because [Appellant] cannot demonstrate that but for counsel's conduct, the outcome of the proceedings would have been different.[10] Counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Monaco*, 869 A.2d 1026 (Pa. Super. 2005).

[10] In addition, this court instructed the jury on how to specifically and properly use the evidence of prior criminal acts. (N.T. 1/23/06, pgs. 119-120; 2/1/06, pgs. 33-34). The law presumes that the jury follows the instructions of the court. *Commonwealth v. Chmiel*, 889 A.2d 501 (Pa. 2005).

PCRA Opinion, 9/18/14, at 10-11 (footnote in original). We agree with the PCRA court and conclude that this issue is meritless. References to Appellant's illicit drug activity were relevant and necessary to prove Appellant's motive, intent, identity, and absence of mistake.

For the reasons set forth above, we discern no error of law or abuse of discretion in the PCRA court's decision. Accordingly, we affirm the order denying Appellant's petition for collateral relief.

Order affirmed.

Judge Mundy joins this Memorandum.

Justice Fitzgerald Concurs in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2016