J-A08007-15

2015 PA Super 144

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DERECK MICHAEL MARTZ, | |
| Appellee | No. 1502 MDA 2014 |

Appeal from the Order Entered August 11, 2014
In the Court of Common Pleas of Montour County
Criminal Division at No(s): CP-47-CR-0000029-2014

BEFORE: SHOGAN, WECHT, and STRASSBURGER,[*] JJ.

OPINION BY SHOGAN, J.: **FILED JUNE 24, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the order[1] entered on August 11, 2014, applying the infancy defense and dismissing those counts of the amended information ("Information") that encompass acts occurring prior to April 2, 1999, when Appellee, Dereck

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] While the appealed order is interlocutory, the Commonwealth, in its notice of appeal, certified that the trial court's August 11, 2014 order substantially handicapped the prosecution of this case. **See** Pa.R.A.P. 311(d) ("In a criminal case, . . . the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."); **see also Commonwealth v. Brister**, 16 A.3d 530, 534 (Pa. Super. 2011) ("The Commonwealth's good faith certification, alone, provides an absolute right to appeal . . . ."). Thus, the instant appeal is properly before us.

1

Michael Martz, reached fourteen years of age. For the reasons that follow, we reverse and remand.

Appellee was born on April 2, 1985. M.S. ("the victim") was born in April of 1990. On September 23, 2013, M.S., who was then twenty-three years old, reported to Danville Police that he had been sexually abused as a child on an ongoing basis by Appellee, who was then twenty-eight years old. N.T., 7/30/14, at 3–6, 25. On January 9, 2014, Appellee was charged in criminal court[2] with twelve counts of each of the following crimes: rape of a child, involuntary deviate sexual intercourse with a child, statutory sexual assault, aggravated indecent assault of a child, indecent assault of a person less than thirteen years of age, and one count of terroristic threats, totaling sixty-one charges. At the preliminary hearing on January 27, 2014, the sixty sexual assault counts were held for trial, and the single count of terroristic threats was dismissed.

Appellee filed a Motion for Bill of Particulars on March 12, 2014, seeking identification of the dates, times, and locations of the sexual assaults. Request for Bill of Particulars, 3/12/14. He also filed a Motion for Bill of Particulars or Other Appropriate Relief on March 24, 2014. In that

---

[2] An individual who has reached the age of twenty-one is not a child pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301 *et seq.*, and is subject to the jurisdiction of the criminal courts, despite being accused of committing the offense before the age of eighteen. ***See***, ***e.g.***, ***Commonwealth v. Monaco***, 869 A.2d 1026, 1028–1030 (Pa. Super. 2005) (relying on § 6302 of the Juvenile Act and concluding individual who was twenty-two years old at time of his arrest was not a child and could not proceed in juvenile court).

motion, Appellee sought dismissal of the Information due to the alleged insufficiency of its allegations and asserted that the Commonwealth did not adequately specify the dates and circumstances of the charges against him, thereby precluding him from formulating defenses. Motion for Bill of Particulars or Other Appropriate Relief, 3/24/14, at unnumbered 2. On April 3, 2014, Appellee filed an omnibus pretrial motion seeking, *inter alia*, dismissal based on prejudicial delay.

On May 9, 2014, due to Appellee's desire to proceed *pro se*, the trial court held a colloquy pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), and Pa.R.Crim.P. 121. In an order dated May 9, 2014, and filed May 22, 2014, the trial court permitted Appellee to proceed *pro se*. Order, 5/22/14, at 1. The trial court also held a hearing on Appellee's other pretrial motions on May 9, 2014, as well as June 9, 2014. On June 27, 2014, the Commonwealth filed an Amended Information containing more specific and detailed allegations. Therein, the assaults were alleged to have begun in 1996 and continued until 2002. The hearing on Appellee's pretrial motions was resumed on July 9, 2014. At the July 9, 2014 hearing, Appellee verbally raised an "infancy defense"[3] in which he sought dismissal of certain counts based on his claim that because he was a child between the ages of eleven and seventeen when the alleged abuse occurred, he lacked capacity to

---

[3] An infancy defense entails the common law presumption that children between the ages of seven and fourteen years lack the capacity to commit crimes. **In the Interest of G.T.**, 597 A.2d 638, 639 (Pa. Super. 1991) (*en banc*).

3

commit the crimes.[4]  In an order dated July 15, 2014, and filed July 18, 2014, the trial court scheduled a supplemental hearing on the pretrial motions.  That hearing was held on July 30, 2014.

On August 11, 2014, the trial court entered the following order:

> AND NOW, to wit, on this 11th day of August, 2014, on the basis of the reasons set forth in the foregoing Opinion, it is ORDERED as follows:
>
> 1. The Defendant's Motion for Bill of Particulars or Other Appropriate Relief is DENIED;
>
> 2. The Defendant's oral Motion to Dismiss based upon the Infancy Defense is GRANTED IN PART.  Counts 1-9, 13-21, 25-33, 37-45, 49-57 shall be dismissed to the extent that they encompass acts occurring prior to April 2, 1999 when the Defendant reached the age of 14.  Those counts shall continue to be subject to prosecution in the present case as to time periods from and after April 2, 1999; and
>
> 3. The Defendant's Motion to Dismiss based upon Prejudicial Delay, contained in the Omnibus Motion filed on April 3, 2014, is DENIED.

Opinion and Order, 8/11/14, at 9.

In the opinion accompanying the August 11, 2014 order, the trial court held there is a rebuttable presumption that Appellee did not have the capacity to appreciate the wrongfulness of his conduct through the age of

---

[4]  While Appellee did not file a written motion to dismiss based on the infancy defense or give prior written notice of intent to present an infancy defense, he did assert his infancy in several paragraphs of his omnibus pretrial motion.  Omnibus Pretrial Motion, 4/3/14, at ¶¶ 20, 27, 31–32.

fourteen. Opinion and Order, 8/11/14, at 3.[5] It found that the Commonwealth had not rebutted that presumption and, accordingly, dismissed counts based on allegations of acts occurring prior to April 2, 1999, which was when Appellee reached the age of fourteen. *Id*.

Appellee filed a Motion for Appointment of Standby Counsel on September 8, 2014, which the trial court granted on September 16, 2014. The Commonwealth filed its notice of appeal on September 9, 2014, certifying that dismissal of the charges substantially handicapped or terminated its case pursuant to Pa.R.A.P. 311(d). Standby counsel withdrew on September 26, 2014, due to a conflict of interest. Pursuant to the trial court's order of September 16, 2014, the Commonwealth filed a concise statement of errors complained of on appeal on October 9, 2014. In an order dated October 15, 2014, the trial court appointed new standby counsel for Appellee.[6] In an order filed on October 16, 2014, and in reliance upon

---

[5] The trial court addressed Appellee's and the victim's ages in relation to the alleged acts as follows:

> The Amended Information alleges a continuing course of conduct from 1996 to 2002, expanded from the original information. This means that [Appellee] could have been as young as 10 (on January 1, 1996) [or] as old as 17 (on December 31, 2002), while the victim could have been as young as 5 and as old as 12 at the time of the alleged acts.

Opinion and Order, 8/11/14, at 5.

[6] Appellee filed a *pro se* brief in this appeal.

5

Pa.R.A.P. 1925(a), the trial court incorporated its Opinion filed on August 11, 2014, "as the basis for the Order of August 11, 2014." Order, 10/16/14.

The Commonwealth raises two issues for our review, as follows:

I.     The Infancy Defense is a doctrine that can no longer be recognized as a defense since the adoption of the Juvenile Act of 1976, *42 Pa.C.S.A.* §6301 *et. seq*. in that its application would result in inequitable and disparate treatment of offenders and victims in the juvenile justice versus the adult criminal justice system for the same offenses.

II.    The Infancy Defense is in essence a claim of "diminished capacity" or "lack of capacity" which requires the Defendant to admit guilt, but then allows the Defendant to assert the same as an affirmative defense which can only be determined at Trial by the fact finder, and cannot be used to exclude evidence or dismiss charges prior to Trial.

Commonwealth Brief at 4.

The Commonwealth's issues involve questions of law. Therefore, our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Barger***, 956 A.2d 458, 461 (Pa. Super. 2008) (citing ***Commonwealth v. States***, 938 A.2d 1016 (Pa. 2007)).

In its first issue, the Commonwealth argues that the infancy defense has been superseded by the Juvenile Act. Specifically, the Commonwealth states that the Juvenile Act re-defined a "delinquent child" as a child "ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision, or rehabilitation." Commonwealth Brief at 10 (citing 42 Pa.C.S. § 6302). The Commonwealth then contends that "[o]bviously, the common law age limits were altered by

6

the adoption of this legislation which clearly establishes a presumption of capacity for children over the age of ten (10) who have committed crimes." Commonwealth Brief at 10. The Commonwealth also argues that an offender "who was under the age of fourteen (14) at the time he committed a crime, but who was not arrested until he was an adult, would be effectively immune from prosecution" as an adult, and that such a position "would effectively vitiate the Legislature's intentional expansion of victim's rights and the [expanded] Statute of Limitations in just this type of sexual assault case."[7] *Id*. at 8. Although we appreciate the Commonwealth's concerns, we are constrained to disagree.

The purpose of the infancy defense is to "protect children from retribution in recognition of their inability to differentiate right from wrong." *In the Interest of G.T.*, 597 A.2d 638, 641–642 (Pa. Super. 1991) (*en banc*). The common law defense of infancy has a long jurisprudential history:

> Down through the centuries the law has attempted to save offending children from the rigidity of the criminal law applicable to adults, but the history of the law has disclosed that such attempts were only sporadic and in many instances accomplished very little. As early as the fifth century B.C., the Twelve Tables (c. 488–451) made the theft of crops at night a capital crime, but a youthful offender could escape with a fine double the value and a flogging. The Romans promulgated the defense of *infantia* which provided absolute immunity for those

---

[7] The statute of limitations for sexual assaults on minors has been extended to "any time up to the later of the period of limitation provided by law after the minor has reached 18 years of age or the date the minor reaches 50 years of age." 42 Pa.C.S. § 5552(b.1), (c)(3).

children who were incapable of speech. Puberty was established as the upper limit of eligibility for mitigated treatment. Between infancy and puberty, criminal responsibility depended on a combination of three factors—the proximity of age to either infancy or puberty, the nature of the offense, and the mental capacity of the offender.

"By the seventeenth century, the Roman classification of criminal responsibility became the basis of the English common-law approach, so that children under seven were incapable of committing a crime while those between seven and fourteen were presumed incapable. Such presumption however was rebuttable by strong and clear evidence. Those fourteen and over were subject to the same criminal laws as were adults." D. Frauenhofer, A. Hart, J. Keefe, P. May, E. Sheehy, & T. Wilson, "Practice and Procedure of the Juvenile Court for the State of Connecticut," 41 Conn.B.J. 201, 206 (1967); *see* 1 W. LaFave & A. Scott, Substantive Criminal Law § 4.11(a); *see generally* A. Kean, "The History of the Criminal Liability of Children," 53 L.Q.Rev. 364 (1937); A. Walkover, "The Infancy Defense in the New Juvenile Court," 31 UCLA L.Rev. 503 (1984).

***In re Tyvonne***, 558 A.2d 661, 663–664 (Conn. 1989). "As with most American common law principles, the infancy defense was imported from Great Britain during colonization and remained in effect after the United States was formed." Tara Schiraldi, *For They Know not What They Do: Reintroducing Infancy Protections for Child Sex Offenders in Light of In re B.W.*, 52 AM.CRIM.L.REV. 679, 683 (Summer 2015).

Pennsylvania has traditionally adhered to the common law rule, as follows:

In Pennsylvania we have followed the common-law rule in measuring the capacity of a child to commit a crime. A child under the age of 7 years is conclusively presumed incapable of the commission of a crime; a child between the ages of 7 and 14 years is likewise presumed incapable of committing a crime but such presumption is subject to refutation by evidence that the

child does possess the criminal capacity; a child over the age of 14 years is prima facie capable of the commission of a crime.

*Commonwealth v. Green*, 151 A.2d 241, 246 (Pa. 1959). Thus, "any special immunity or presumption of incapacity ceases" when the child reaches fourteen. *Commonwealth v. Cavalier*, 131 A. 229, 234 (Pa. 1925).[8]

Despite this longstanding adherence to the infancy defense in Pennsylvania, this Court held in *Interest of G.T.* that the common law defense of infancy was "irrelevant in determinations of delinquency in our juvenile justice system." *Interest of G.T.*, 597 A.2d. at 643. We reasoned that:

> The purpose of determining delinquency under the Juvenile Act is to identify those children who have committed an act which would be a crime if it had been committed as an adult and who are, therefore, in need of special treatment, supervision and rehabilitation. Delinquency proceedings are not criminal in nature but are intended to address the special problems of children who have engaged in aberrant behavior disclosing a need for special treatment. Therefore, the defense of infancy, created to protect children from retribution in recognition of their inability to differentiate right from wrong, is irrelevant to a determination regarding a juvenile's amenability to treatment, rehabilitation and supervision. Indeed, the Act provides that, in some instances where it is determined that rehabilitative goals cannot be met, the court may rule that the offense should be prosecuted, and transfer the matter to criminal proceedings. *See* 42 Pa.C.S. § 6355 (a)(4)(iii)(A).

---

[8] In fact, pursuant to the Juvenile Act, "delinquent act" does not include murder and many other offenses if committed by a child fifteen years of age or older. 42 Pa.C.S. § 6302. These charges may be directly filed in criminal court.

*Id*. at 641–642. In so holding, however, we emphasized that "we are not of the opinion that our decision today encroaches upon the common law defense. The infancy defense arises in a **criminal** proceeding and, as we have stated, a delinquency proceeding is not criminal in nature." *Id*. at 642 (emphasis in original).

In applying the infancy defense, the trial court in the case *sub judice* relied on the reasoning of **Interest of G.T.**, as follows:

> In G.T., the Superior Court held that, *as to juvenile court proceedings*, the Juvenile Act, 42 Pa.C.S. §6301 et seq., abrogated the common law Infancy Defense because, in the opinion of the Superior Court, the juvenile courts would be unable to provide the treatment intended by the Juvenile Act for children as young as 10 years of age if the Infancy Defense were to continue to be applicable to "delinquency proceedings" under the Juvenile Act, as differentiated from a "*criminal* proceeding." G.T., 597 A.2d at 642 (emphasis in original).
>
> In the present case, the Juvenile Act does not apply, since the Defendant is 29 years old and the jurisdiction of the Juvenile Act ends when a juvenile delinquent reaches the age of 21 years. See: Definition of "child" at §6302 (under 21 years of age) and application of that term at §6321 ("Commencement of proceedings") and §6303 ("Scope of chapter"); Commonwealth v. Monaco, 2005 Pa. Super. 79, 869 A.2d 1026 (2005). Since it is the Juvenile Act which abrogated the Infancy Defense, and only in juvenile court delinquency proceedings, and since the policy of the Juvenile Act as articulated in G.T., supra, to facilitate the treatment of a "child" in juvenile court is not applicable to the present case, which is a "criminal proceeding," the Infancy Defense applies and the Defendant is rebuttably presumed to have lacked the capacity to appreciate the criminality of his alleged actions through the age of 14 years.

Trial Court Opinion, 8/11/14, at 4.

Given our prior pronouncement in **Interest of G.T.**, we cannot conclude that the trial court erred in finding that the infancy defense remains viable in criminal proceedings. In **Interest of G.T.**, we held that the infancy defense was abrogated by the Juvenile Act in juvenile proceedings because otherwise, the juvenile court would be unable to provide treatment. That holding does not undermine the underlying reason for the common law defense, *i.e.*, "to protect children from retribution in recognition of their inability to differentiate right from wrong. . . ." **Interest of G.T.**, 597 A.2d at 641–642. Although, in this case, we are not protecting a "child" from retribution in a criminal proceeding, we are determining criminal responsibility. The ability to differentiate right from wrong is integral to that determination.

Furthermore, repeal of our common laws by implication is disfavored. To modify the common law, a statute must expressly declare its intent to do so in its provisions. **In re Rodriguez**, 900 A.2d 341, 415 (Pa. 2003) (quoting **Rahn v. Hess**, 106 A.2d 461, 464 (Pa. 1954) ("Statutes are never presumed to make any innovation in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions"); **accord United States v. Texas**, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law."). Thus, we cannot

11

conclude that the Juvenile Act abrogated the viability of the common law defense of infancy in criminal proceedings.

In summary, criminal proceedings are a determination of criminal responsibility, while the purpose of a juvenile disposition hearing is to determine treatment necessary for rehabilitation. In **Interest of G.T.**, the viability of the common law defense of infancy in criminal proceedings was preserved by this Court. The Commonwealth has not directed us to any subsequent developments in the statutory or common law that cause us to abandon this position. Therefore, we hold that the common law defense of infancy remains applicable in criminal proceedings where a defendant is being prosecuted for conduct committed before the age of fourteen. To hold otherwise would subject individuals to retribution for conduct at an age where they were unable, or presumptively unable, to differentiate right from wrong.

The Commonwealth's second issue alternatively maintains that once Appellee verbally asserted the infancy defense, the trial court erroneously shifted the burden to the Commonwealth to prove that Appellee had "capacity" at the time the crimes allegedly were committed. The Commonwealth suggests that the infancy defense is an affirmative one to be raised as a method to cast doubt on Appellee's capacity at trial, rather than as a rebuttable presumption raised pretrial. Commonwealth Brief at 15–17.

We disagree, but find that the Commonwealth was not provided with a full and fair opportunity to rebut the presumption in this case.

At the July 9, 2014 hearing, Appellee introduced the infancy defense as follows:

[By Appellee]: I think I will raise by other issue now. . . .

* * *

It's called the infancy defense. It's a common law defense in Pennsylvania and actually the—if this case would have been tried in juvenile court, it was abolished by the juvenile act, but what it does is protects children between the ages of seven and 14-years-old. And what it does is it considers them to be incapable of committing a crime. It's a common law rule. It's still active in Pennsylvania. It it's not in the context of the juvenile act which this case is—what we're doing here is we're prosecuting a child in an adult court situation.

* * *

I'm saying the infancy defense is not relevant dealing with juvenile children being I don't know if you want to say prosecuted or adjudicated as delinquent in court in a juvenile setting, but a child—for acts that were committed by a child that are being tried in adult court, the infancy defense which, by the way it's presumed—the presumption is actually for children that are between the ages of seven and 14-years-old . . . .

N.T., 7/9/14, at 18–19. The trial court subsequently scheduled a supplemental hearing for July 30, 2014. In an order dated July 15, 2014, and filed July 18, 2014, the trial court stated that one of the purposes of the hearing would be to consider Appellee's "oral motion to dismiss based upon the 'infancy defense'" along with Appellee's March 24, 2014 Motion for Bill of

Particulars and Other Appropriate Relief and "that portion of the Omnibus Motion alleging prejudicial delay. . . ." Order, 7/18/14, at 1. The trial court explained in that order that "all three motions require consideration of common facts and legal issues that relate to each other. . . ." *Id*.

The majority of the July 30, 2014 hearing was devoted to the issue of prejudicial delay and involved the Commonwealth's presentation of the testimony of Danville Police Chief Eric D. Gill. N.T., 7/30/14, at 2–26. Toward the end of the hearing, and after the Commonwealth had rested, the trial court briefly addressed the issue of the infancy defense with Appellee. Appellee stated the following:

> What I want to say is I am not asking for dismissal based on the infancy [defense]. My motion is for dismissal for lack of am [sic] specific dates for me to prepare the defense of infancy at trial. The infancy defense itself would not be—it would be something that would be given to a Jury. It would be an additional burden of proof.

N.T., 7/30/14, at 28. At that point, Appellee, still proceeding *pro se*, presented the court and the Commonwealth with a brief on this issue. In response to the trial court's inquiry, the Commonwealth indicated its desire to file a brief as well. *Id*. at 34–35. The Commonwealth also asked to be able to present evidence and stated:

> [U]pon researching the infancy defense and the issues that now have been raised by that particular defense, if you will, that [Appellee] is claiming, it seems appropriate that I be able to bring in some of his past record which shows his interaction with the legal system, his knowledge of right and wrong, **which certainly go[] to his question of capacity**.

*Id*. at 37 (emphasis added). The trial court refused to hear testimony, however, and responded as follows: "The hearing is closed on this infancy defense issue. I am going to make a ruling on it." *Id*.

The Commonwealth now contends:

> The prosecution does not bear the burden of establishing capacity; instead, [Appellee] would first have to **admit** that he committed these sexual offenses against the victim. The Infancy Defense would then be an attempted justification, excuse or mitigation of [Appellee's] criminal conduct. The Commonwealth would then present rebuttal evidence to contradict [Appellee's] affirmative defense in that regard. The issue would be decided by the jury at the time of trial.

Commonwealth Brief at 16 (emphasis in original).

This Court has discussed capacity, as that term is understood in relation to the infancy defense, as follows:

> Capacity, in terms of the infancy defense, refers, not to the ability to formulate *mens rea*, . . . but to the ability to appreciate the criminality and wrongfulness of one's acts. *See* F. McCarthy, *The Role of the Concept of Responsibility in Juvenile Delinquency Proceedings*, 10 University of Michigan Journal of Law Reform 181, 183–185 (1977). **It is this capacity, and not the ability to formulate the necessary intention, that is the subject of the common law presumptions regarding children**.

*Interest of G.T.*, 597 A.2d at 640 (emphasis added). We have previously held that the infancy defense remains a presumption in criminal proceedings, although "such presumption is subject to refutation. . . ." *Green*, 151 A.2d at 246. Based on this reasoning and the lack of any subsequent pronouncements from our Supreme Court or legislation in this area, we are not persuaded by the Commonwealth's references to the

defense of diminished capacity or mental infirmity. Thus, any presumption under the infancy defense should be available to Appellee for his conduct up until fourteen years of age. *Id*.; *Cavalier*, 131 A. 229.

In summary, the common law defense of infancy is applicable to the charges against Appellee until the time he turned fourteen years old. However, it applies as a rebuttable presumption between the ages of seven and fourteen. After careful review of the certified record in this case, we conclude that the Commonwealth was not given an adequate opportunity to present rebuttal evidence, no doubt due in part to the convoluted nature of the proceedings and Appellee's *pro se* status. As noted *supra*, criminal responsibility is generally dependent upon three factors: 1) proximity of age to either infancy or puberty, 2) the nature of the offense, and 3) the mental capacity of the offender. *In re Tyvonne*, 558 A.2d at 663. Relevant evidence of capacity goes to an appreciation of the wrongfulness of the conduct and may consist of, *inter alia*, prior experience with the juvenile or criminal systems at the time of the offenses and attempts to conceal the alleged conduct. Although we recognize the difficulty of producing such evidence many years after the alleged conduct, the Commonwealth should have been given a full and fair opportunity to produce such rebuttal evidence. In not doing so, the trial court erred.

Order reversed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/24/2015</u>